UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL YORK<br>65 Forest Mountain Court<br>Sanford, NC 27332<br><br>　　Plaintiff,<br>v.<br><br>AYELLOR KARBAH<br>110 Galveston Street, SW<br>Apartment T2<br>Washington, DC 20032<br><br><br>THE DISTRICT OF COLUMBIA<br>Serve: Karl Racine<br>　　Attorney General<br>　　441 4th Street, NW<br>　　Washington, DC 20001<br><br><br>　　Defendants. | Case No.<br><br><br><br><br><br>COMPLAINT<br>& JURY DEMAND |

## JURISDICTION AND VENUE

1.  This action arises under the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1332, 1343 and 2201. This Court also has supplemental jurisdiction over related District of Columbia common law claims pursuant to 28 U.S.C. § 1367, in that the common law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.  Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District of Columbia.

1

## PLAINTIFF

3. Plaintiff MICHAEL YORK, Colonel, United States Army is a citizen of the United States and temporarily resides in the Commonwealth of Virginia.

4. Plaintiff MICHAEL YORK, Colonel, United States Army is a citizen of the United States and permanently resides in the State of North Carolina.

5. Plaintiff brings this action in order to redress deprivations of the rights secured to him by the United States Constitution and the common law of the District of Columbia caused by the Defendants.

## DEFENDANTS

6. Defendant AYELLOR KARBAH ("Karbah") is a citizen of the United States and a resident of the District of Columbia.

7. At all relevant times, Defendant Karbah was a duly licensed police officer and was employed by Defendant District of Columbia in the District of Columbia Metropolitan Police Department ("MPD").

8. At all relevant times, Defendant Karbah was an employee acting under the color of law within the scope of his employment with the District of Columbia and MPD.

9. Defendant Karbah is being sued in his official capacity and in his individual capacity.

10. Defendant District of Columbia is a municipal corporation organized pursuant to the laws of the United States, with the authority to sue and be sued, and the local

government for the territory constituting the permanent seat of the federal government of the United States.

11.     At all relevant times, and at all times, Defendant District of Columbia was responsible for the operation of the MPD as a department of the local government.

12.     At all relevant times, Defendant District of Columbia was responsible for the policies, procedure, rules, regulations, and customs set forth and utilized for the operation of the MPD.

## FACTS

13.     On December 13, 2019 at approximately 7:17 p.m., Plaintiff was driving northbound on I-395, on his way into the District of Columbia from Virginia.

14.     Plaintiff was driving in stop and go traffic when Defendant Karbah's vehicle in the far right on ramp lane tried to merge into the lane the Plaintiff was driving in.

16.     Defendant Karbah's vehicle approached Plaintiff's vehicle from the right.

17.     Plaintiff and Defendant Karbah made eye contact with each other and Defendant Karbah then started vocalizing toward Plaintiff.

18.     Defendant Karbah then continued to drive his vehicle toward Plaintiff's vehicle and appeared to not yield.

19.     Defendant Karbah continued to aggressively attempt to force his way into Plaintiff's lane while approaching the upcoming exit while driving on the right shoulder.

20.     Defendant Karbah then came close enough to clip Plaintiff's passenger side mirror with his driver side mirror.

21. Plaintiff's then caused his vehicle to stop and Defendant Karbah then drove around the front of Plaintiff's vehicle and parked at a 45 degree angle across the lane, blocking Plaintiff's car and the entire lane.

22. Defendant Karbah then jumped out of his vehicle with a weapon drawn and moved toward Plaintiff's vehicle and started yelling at Plaintiff, stating you "could have killed me and my wife."

23. Defendant Karbah brandished a black or dark grey two-tone .45 or Glock style/square shaped, slide weapon in the Plaintiff's direction and came within a few feet of Plaintiff.

24. Plaintiff remained in his vehicle with his window down yelling toward Defendant Karbah and asking what he was thinking and why he clipped his car's mirror. During this entire period Plaintiff saw the Defendant's gun, and said "stop, what are you doing. I am calling the cops." Defendant continued to approach Plaintiff's vehicle with weapon drawn while yelling at Plaintiff.

25. During this time Plaintiff was in communications with the 911 operator from Arlington County, Virginia on his hands free mobile. Plaintiff also asked a friend to call the police. At no time did Plaintiff feel he was free to leave given Defendant's use of a gun that was held and was pointed toward him at close range.

26. After Plaintiff hung up the hands free mobile phone and reporting the incident, Defendant Karbah continued yelling at Plaintiff and said "I am a cop but I can't investigate myself so I am calling the police". Karbah then stood in front of Plaintiff's vehicle and made a telephone call.

27. Defendant Karbah expressed to Plaintiff that he was reporting a traffic incident to the Metropolitan Police Department in which he was employed. Defendant proceeded to rear of Plaintiff's vehicle and took pictures of Plaintiff's vehicles' license plate.

28. At all relevant times Defendant Karbah was a full time police officer with the Metropolitan Police Department on probationary status, having completed his training at the Blue Plains training facility of MPD and had full arrest powers.

29. Upon information and belief, at sometime after the assault on Plaintiff, the incident was reported to Defendant's Metropolitan Police Department supervisor, Sergeant Todd Korson and Defendant Karbah was immediately placed on administrative duties pending an internal investigation by the Metropolitan Police Department.

30. Upon information and belief, Defendant District of Columbia through its Metropolitan Police Department, investigated the matter and terminated Defendant Karbah for his actions.

31. Upon conclusion of the event Plaintiff York suffered Post Traumatic Stress Syndrome symptoms and came under the care of medical personnel who later diagnosed him with Post Traumatic Stress Disorder as a result of the incident with Defendant Karbah on December 13, 2019.

### COUNT ONE

**(Defendant McHugh's Violation of Plaintiff York's
Fourth Amendment Rights Under 42 U.S.C. § 1983 – Searches,
Seizures and Arrests Made Without Probable Cause)**

32. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

33. At all relevant times, Plaintiff York had a constitutional right under the Fourth Amendment of the United States Constitution to be secure from state actions that result in unlawful searches, seizures, and arrests made without probable cause.

34. At all relevant times, Defendant Karbah was a state actor acting under the color of law, custom, or usage of the District of Columbia and on behalf of and in the interests of his employer, the District of Columbia.

35. Defendant Karbah pursued, searched, seized and arrested Plaintiff York, all without probable cause to believe that he had committed or was about to commit a crime.

36. Defendant Karbah did not have a good faith or reasonable belief that probable cause existed to seize or arrest Plaintiff York.

37. As a direct and proximate result of Defendant Karbah's wrongful conduct, Plaintiff York suffered significant emotional pain, physical pain, fear and shame, and other damages.

### COUNT TWO

**(Defendant Karbah Assault on Plaintiff York)**

38. Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

39. On December 13, 2019 at approximately 7:17 p.m., Plaintiff was driving northbound on I-395, on his way into the District of Columbia from Virginia.

40. Plaintiff was driving in stop and go traffic when Defendant Karbah's vehicle in the right lane tried to merge into the lane Plaintiff was driving in.

41. Defendant Karbah's vehicle approached Plaintiff's vehicle from the right.

42. Plaintiff and Defendant Karbah made eye contact with each other and Defendant Karbah then started vocalizing toward Plaintiff.

43. Defendant Karbah then continued to drive his vehicle toward Plaintiff's vehicle and appeared to not yield.

44. Defendant Karbah continued to aggressively force his way into Plaintiff's lane while approaching the upcoming exit while driving on the right shoulder

45. Defendant Karbah then came close enough to clip Plaintiff's passenger side mirror with Defendant Karbah's driver side mirror.

46. Plaintiff's then caused his vehicle to stop and Defendant Karbah then drove around the front of Plaintiff's vehicle and parked at a 45 degree angle across the lane, blocking Plaintiff's car and the entire lane.

47. Defendant Karbah then jumped out of his vehicle with a weapon drawn and moved toward Plaintiff's vehicle and started yelling at Plaintiff, stating you "could have killed me and my wife."

48. Defendant Karbah brandished a black or dark grey two-tone .45 or Glock style/square shaped, slide weapon in the direction and within a few feet of Plaintiff.

49. Plaintiff remained in his vehicle with his window down yelling toward Defendant Karbah and asking what he was thinking and why he clipped his car's mirror. During this entire period Plaintiff saw the Defendant's gun, and said "stop, what are you doing. I am calling the cops."

50. During this time Plaintiff was in communications with the 911 operator from Arlington County, Virginia on his hands free mobile. Plaintiff also asked a friend to call

the police. At no time did Plaintiff feel he was free to leave given Defendant's use of a gun toward him at close range.

51.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered significant emotional pain, physical pain, suffering, fear and shame, and other damages.

## COUNT THREE

### (Defendant District of Columbia's Intentional Infliction of Emotional Distress on Plaintiff York)

52.     Plaintiffs incorporate by reference each preceding paragraph as if fully set forth herein.

53.     99.     On December 13, 2019 at approximately 7:17 p.m., Plaintiff was driving northbound on I-395, on his way into the District of Columbia from Virginia.

54.     Plaintiff was driving in stop and go traffic when Defendant Karbah's vehicle in the right lane tried to merge into the lane Plaintiff was driving in.

55.     Defendant Karbah's vehicle approached Plaintiff's vehicle from the right.

56.     Plaintiff and Defendant Karbah made eye contact with each other and Defendant Karbah then started vocalizing toward Plaintiff.

57.     Defendant Karbah then continued to drive his vehicle toward Plaintiff's vehicle and appeared to not yield.

58.     Defendant Karbah continued to aggressively force his way into Plaintiff's lane while approaching the upcoming exit.

59.     Defendant Karbah then came close enough to clip Plaintiff's passenger side mirror with Defendant Karbah's driver side mirror.

60.     Plaintiff then caused his vehicle to stop and Defendant Karbah then drove around the front of Plaintiff's vehicle and parked at a 45 degree angle across the lane, blocking Plaintiff's car and the entire lane.

61.     Defendant Karbah then jumped out of his vehicle with a weapon drawn and moved toward Plaintiff's vehicle and started yelling at Plaintiff.

62.     Defendant Karbah then brandished a black or dark grey two-tone .45 or Glock style/square shaped, slide weapon in the direction and within a few feet of Plaintiff.

63.     Plaintiff remained in his vehicle with his window down yelling toward Defendant Karbah and asking what he was thinking and why he clipped his car's mirror. During this entire period Plaintiff saw the Defendant's gun, and said "stop, what are you doing. I am calling the cops."

64.     During this time Plaintiff was in communications with the 911 operator from Arlington County, Virginia on his hands free mobile. Plaintiff also asked a friend to call the police. At no time did Plaintiff feel he was free to leave given Defendant's use of a gun toward him at close range.

65.     At the time Defendant Karbah committed this unlawful conduct towards Plaintiffs, he was acting in the scope of his employment as a police officer employed by the District of Columbia Metropolitan Police Department and was acting on behalf of and in the interests of his employer, Defendant District of Columbia.

66.     Defendant District of Columbia is vicariously liable for the conduct taken by Defendant McHugh against Plaintiff Vashti Sherrod complained of herein under the doctrine of *respondeat superior*.

67. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff Vashti Sherrod suffered significant emotional pain and suffering, anxiety, fear and shame, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

(a) enter judgment against Defendants;

(b) enter a declaratory judgment declaring that the actions of Defendants Karbah and the District of Columbia violated Plaintiffs' constitutional rights under the Fourth Amendment of the United States Constitution;

(c) award compensatory damages against all Defendants jointly and severally in the amount of $1 million;

(d) award Plaintiffs' costs, interest, and reasonable attorneys' fees for this action pursuant to 42 U.S.C. §1988; and

(e) order such other and further relief as the Court deems just and proper under the circumstances.

_____s_____
*Kenneth D. Bynum*
Kenneth D. Bynum
D.C. Bar No. 424515
Ronald Dixon
DC Bar No.: 954628
Bynum & Jenkins
1010 Cameron Street
Alexandria, VA 22314
T: (703) 549-7211
F: (703) 549-7701
E: kbynum@bynumandjenkinslaw.com
E: RDixon@bynumandjenkinslaw.com